**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **KARNETHA LADAWN WRIGHT-FOX,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 15-CV-550-CVE-PJC** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of the** | ) | |
| **Social Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

Plaintiff, Karnetha Ladawn Wright-Fox ("Wright"), seeks judicial review of the decision

of the Commissioner of the Social Security Administration ("Commissioner" and "SSA")

denying Wright's applications for disability insurance benefits and for supplemental security

income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* The

matter has been referred to the undersigned Magistrate Judge for report and recommendation.

For the reasons discussed below, the undersigned recommends that the Commissioner's decision

be **AFFIRMED**.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment." 42 U.S.C. § 423(d)(1)(A).  A claimant is disabled under the Act only if his

"physical or mental impairment or impairments are of such severity that he is not only unable to

do h[er] previous work but cannot, considering his age, education, and work experience, engage

in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §

423(d)(2)(A).  Social Security regulations implement a five-step sequential process to evaluate a disability claim.  20 C.F.R. § 404.1520.[1]  *See also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (detailing steps).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Lax*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation and quotation omitted).

Judicial review of the Commissioner's determination is limited in scope to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied.  *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004).

"Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion.  It requires more than a scintilla, but less than a preponderance." *Wall*, 561 F.3d at 1052  (quotation and citation omitted).  Although the court will not reweigh the evidence, the court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.*

---

[1] Step One requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510.  Step Two requires that the claimant establish that she has a medically severe impairment or combination of impairments that significantly limit her ability to do basic work activities.  *See* 20 C.F.R. § 404.1520(c).  If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied.  At Step Three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App.1 ("Listings").  A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry.  If not, the evaluation proceeds to Step Four, where the claimant must establish that she does not retain the residual functional capacity ("RFC") to perform his past relevant work.  If the claimant's Step Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account her age, education, work experience, and RFC, can perform.  *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. 20 C.F.R. § 404.1520.

## Background

Wright was fifty years old on the alleged date of onset of disability and fifty-four on the date of the Commissioner's final decision. [R. 1, R. 286].  She has a bachelor's degree in management of computer systems.  [R. 32, R. 80].   She was previous experience as a secretary and a helpdesk analyst. [R. 307].  She claims to have been unable to work since April 1, 2010, as a result of physical impairments, including glaucoma, arthritis, migraine headaches, central corneal thickness and light sensitivity. [R. 306].

## The ALJ's Decision

In his decision of February 27, 2014,[2] the ALJ found that Wright met insured status requirements through December 31, 2014, and, at Step One, that she had not engaged in any substantial gainful activity since her alleged onset date of April 1, 2010.  [R. 14-15].  He found at Step Two that Wright had severe impairments of glaucoma, degenerative disc disease of the lumbar spine and peripheral neuropathy.  [R. 15].

At Step Three, he found that Wright's impairments did not meet any listing.  *Id.*  He concluded that she had the following residual functional capacity ("RFC"):

> She has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c).  The claimant can lift or carry no more than 50 pounds occasionally and 25 pounds frequently; stand and/or walk for 6 hours in an 8-hour workday; sit 6 hours in an 8-hour workday; frequently climb stairs, ladders, ropes, and scaffolds; frequently balance, bend or stoop, kneel, crouch, and crawl; frequently bilaterally reach, finger, handle, and feel; avoid moderate exposure to extreme cold (less than 50 degrees Fahrenheit), extreme [heat] (over 100 degrees Fahrenheit), wetness, humidity, vibration or vibratory tools, fumes, odors, dusts, toxins, gases, and poor ventilation; avoid all exposure to hazardous or fast machinery and unprotected heights; and can read 14-font print with glasses, use depth perception, and should avoid direct sunlight and bright lights.

---

[2] On March 27, 2012, the ALJ entered a decision finding Wright was not disabled.  [R. 105-112 (Ex. 5A)].  The Appeals Council remanded the case, directing the ALJ to consider, *inter alia*, new and material evidence submitted by the claimant in support of her request for review. [R. 116-119 (Ex. 6A)].

[R. 15].

At Step Four, the ALJ determined that, based on her RFC, Wright could not perform past relevant work as a secretary.  [R. 22].  At Step Five, he found that, considering Wright's age, education, work experience and RFC, there are other jobs that exist in significant numbers in the national economy that the claimant can also perform, including Hand Packer (SVP 2, DOT Code 920.587-018), Dishwasher (SPV 2, DOT Code 318.687-010); and Laundry Worker (SVP 2, DOT Code 361.685-018).  [R. 23].

Accordingly, the ALJ determined that Wright had not been under a disability, as defined in the Social Security Act, from April 1, 2010, through the date of the decision.  *Id.*

## Plaintiff's Allegations

Wright alleges that the ALJ erred, as a matter of law, by failing to properly evaluate the medical opinions of consultative examining physician Michael Karathanos, M.D., and that the ALJ's residual functional capacity assessment was not supported by substantial evidence.

## Analysis

### 1. Evaluation of Dr. Karthanos' Opinions

Dr. Karathanos examined Wright on May 20, 2013. [R. 618-626 (Ex. 23F)]. He assessed her has having chronic lumbosacral strain, chronic cervical strain and a history of glaucoma. [R. 620].  He completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical), in which he opined that she could lift and carry up to ten pounds occasionally; sit one hour at a time and six out of eight hours a day; stand thirty minutes at a time and one out of eight hours a day; walk fifteen to thirty minutes at a time for a total of thirty minutes to one hour out of an eight-hour day; and reach in all directions occasionally.  [R. 621-626].

The ALJ accorded Dr. Karathanos' Medical Source Statement "little weight" on the basis that it was inconsistent with the doctor's own examination results on the same date.  [R. 21]. The ALJ pointed out that the doctor reported she was alert, oriented and cooperative; her memory was adequate for activities of daily life; her mood and behavior appear normal; cranial exam showed visual fields appeared grossly full on confrontation; the doctor noted Wright did not exert her full strength during muscle testing, but he did not detect any spasticity, rigidity, involuntary movements, tremors, atrophy or fasciculations; her gait was stable and somewhat slow; she was able to perform tandem gait and walked on heels and toes; and lumbosacral exam revealed about fifty percent decreased flexion and about twenty percent of extension.  [R. 21 (citing Ex. 23F)].

Wright asserts that the ALJ's analysis on this point was insufficient because it ignored "a considerable amount of evidence elsewhere in the record that tended to support Dr. Karathanos' opinions."  [Dkt. #14 at 6].

When an RFC conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted.  SSR 96-8P (S.S.A.), 1996 WL 374184 at *7.  As noted above, the ALJ satisfied this obligation by pointing out the ways in which the doctor's own examination findings contradicted the RFC.   Additionally, the ALJ cited the following medical evidence that supported his RFC and contradicted Dr. Karathanos' opinions:

- With respect to exertional limitations as well as lack of postural and manipulative limitations, the ALJ gave "great weight" to the RFC assessment completed by state agency nonexamining consultant, Kenneth Wainer, M.D., who concluded Wright could occasionally lift and/or carry fifty pounds, frequently lift and/or carry twenty-five pounds, stand and/or walk about six hours in an eight-hour workday, sit about six hours in an eight-hour workday, had no limitations on push and/or pull, and had no postural limitations.[3] [R. 21, 525-532 (Ex. 11F)].

---

[3] The ALJ gave "little weight" to Dr. Wainer's opinions regarding visual limitations and environmental limitations because he found Wright to be more limited in those areas.

- The ALJ gave "great weight" to the opinion of consultative examining physician Johnson Gourd, M.D. The doctor rated Wright's strength as 5/5 in all extremities and also stated that Wright "completely exaggerate[d] the ROM exam to include very slow and deliberate movements, eyes closed, . . . yawning, then laughing." He concluded the ROM "is essentially normal in all areas." He noted she completed heel-toe walking "without difficulty," but "very very slow and deliberate," and stated, "She does not give full effort on trying to assess bilateral grip strength." Her gate was stable and steady without use of assistive devices, she was able to rise from a seated position without difficulty, but "ambulate[d] at a very slow, exaggerated speed." He assessed Wright has having glaucoma and "arthritis" by history, but stated: "She is currently on no anti-inflammatories, there are no physical findings consistent with her level of effort. Suspect secondary gain in light of level of exaggeration." [R. 21, R. 598-611 (Ex. 20F)].

Under 20 C.F.R. §§ 404.1527(c) and 416.927, the opinion of examining physicians is generally given more weight than the opinion of nonexamining physicians, and the opinion of treating physicians is given more weight than the opinion of nontreating physicians. However, "[i]n appropriate circumstances, opinions for State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources," including when "the State agency medical or p[s]ychological consultant's opinion is based on a review of a complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source." SSR 96-6P (S.S.A.), 1996 WL 374180 at *3. Thus, the ALJ permissibly relied on both the opinion of consultative examining physician Dr. Gourd and the nonexamining agency expert in formulating Wright's RFC.

Ultimately the ALJ—not a physician—is charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1527(d), 416.927(d). *See also Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004). When faced with conflicting medical evidence, "[t]he trier of fact has the duty to resolve that conflict." *Richardson v. Perales*, 402 U.S. 389, 399 (1971). The ALJ did so in this

case, and in the process, fulfilled his obligation to explain the weight he assigned to each opinion.  *See Vigil v. Colvin*, 805 F.3d 1199, 1202 (10th Cir. 2015).

## 2. RFC Assessment

Wright contends the ALJ's determination that she could perform medium work was not supported by substantial evidence.

The ALJ found—and the Commissioner does not dispute—that Wright had the "severe" impairments of degenerative disc disease of the lumbar spine and peripheral neuropathy. However, the mere existence of a "severe" impairment is not sufficient proof of disability. Instead, Wright must demonstrate that her problems were so functionally limiting as to prevent her from engaging in any substantial activity.  *See* 423(d)(1)(A); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

As noted above, the ALJ relied on the opinions of nonexamining agency physician Dr. Wainer and consultative examining physician Dr. Gourd in formulating Wright's RFC. Additionally, he thoroughly discussed the medical evidence of record.  Among his observations:

- Wright was seen by Gary Cannon, D.O., on February 9, 2010, five days after a motor vehicle accident. She complained of a sore neck and right side.  She was diagnosed with cervical strain.  Neck X-rays were "okay," and she was prescribed Ibuprofen 800 mg. [R. 18, R. 483 (Ex. 10F)]. On February 23, 2011, Wright presented with left hip pain, moderate in severity, and low back discomfort, which she described as achy and sharp. [R. 17, R. 487].  She was prescribed Ibuprofen 800 mg, Prednisone and Lortab.  *Id.*

- When Dr. Gourd performed an internal medicine consultative exam on January 14, 2011, he reported Wright's muscle strength was 5/5 in all extremities; she had full painless range of motion in all extremities except for slight pain in wrists and left hip; leg raise was negative bilaterally, and heel-toe walking was performed without difficulty; her gait was stable; she was able to rise from a seated position without difficulty and ambulated at an appropriate speed with a very slight limp, favoring her left leg. [R. 17, R. 462-471 (Ex. 7F)].

- Kris Parchuri, M.D., who saw Wright on March 15, 2012 to evaluate her left hip and low back pain, observed that she had a non-antalgic gait, there were no motor deficits, x-rays

revealed advanced L5-S1 degenerative disc disease, but no instability was appreciated. [R. 18, R. 581 (Ex. 14F)].  An MRI of the lumbar spine dated March 22, 201, revealed lumbar spondylosis with moderate L4-5 central canal narrowing and multi-level neuroforaminal narrowing most pronounced at L4-5 and L5-S1.  [R. 18, R. 541-548 (Ex. 14F)].

- Jean Bernard, M.D., examined Wright on May 18, 2012, on a follow up visit for low back pain and severe headache.  [R. 18, R. 555 (Ex. 16F)].  She reported her last epidural injection helped her only a few days, but up to 100 percent.  *Id.*

- Wright was seen by Michelle Bucholtz, D.O. on March 6, 2012, May 7, 2012, and October 24, 2012. [R. 19, R. 563-597 (Ex. 19F)].  On the initial visit, Wright complained of neck pain, constant headaches and low back spasms.  She said most of the problem is her left hip, and she takes Prednisone for flare ups.  X-rays of her left hip showed degenerative changes with small osteophyte along the lateral acetabulum, but there was no acute or additional significant osseous abnormality.  When she returned on May 7, 2012, Wright reported having migraines about twice a week, but taking flexeril helps. [R. 573]. Also, she was getting injections for her back and hip pain and they were working "okay" for her.  *Id.* She also reported cervical muscle spasms.  [R. 574].  She had normal movement of all extremities.  *Id.*  Her attitude, mood, affect, motor function, gait and stance were all normal.  *Id.* She was assessed with classic migraine and muscle spasm, and the doctor prescribed Imitrex 25 mg, and Ibuprofen 800 mg.  *Id.* at 575.  On October 24, 2012, Dr. Bucholtz ordered a CT scan of Wright's head for her glaucoma and migraines.  [R. 570-571].  The scan revealed no acute intracranial abnormality, but moderate bilateral ethmoid sinus disease was noted. [R. 583].

- On April 29, 2013, Ashok Kache, M.D., performed a motor nerve study, sensory nerve study and EMG study on Wright.  The doctor found that she had bilateral lower extremity sensory neuropathy.  Motor nerve conduction studies of the peroneal and posterior tibials were within normal limits. Needle EMG study of both legs and paraspinals showed no evidence of radiculopathy.  [R. 20, R. 612-616 (Ex. 21F)].

- On August 14, 2013, Alison Hansen, O.D., noted that Wright was able to navigate around the office and examining room and to get in and out of the examining chair without assistance.  [R. 20, R. 632 (Ex. 25F)].

The evidence cited by the ALJ, as discussed above, comprises "substantial evidence" supporting the ALJ's decision.  *See Wall*, 561 F.3d at 1052.  While this case might be susceptible to conclusions that differ from those made by the ALJ, it is not the court's role to make findings in the first instance.  42 U.S.C. § 405(g) ("The findings of the Commissioner of the Social Security as to any fact, if supported by substantial evidence, shall be conclusive."); *Allen v. Barnhart*, 357

F.3d 1140, 1143-45 (10th Cir. 2004) (court acts within confines of its administrative authority).

The court cannot reweigh the evidence. *Newbold v. Colvin*, 718 F.3d 1257, 1265 (10th Cir. 2013).

**Conclusion**

The undersigned finds that the ALJ evaluated the record in accordance with the legal

standards established by the Commissioner and the court and further that there is substantial

evidence in the record to support the ALJ's decision. Accordingly, the undersigned United

States Magistrate Judge **RECOMMENDS** that the decision of the Commissioner finding Wright

not disabled be **AFFIRMED**.

**Objections**

In accordance with 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b)(2), a party may file

specific written objections to this report and recommendation, but must do so by November 15,

2016. If specific written objections are timely filed, the District Judge assigned to this case will

make a *de novo* determination in accordance with Rule 72(b). A party waives District Court

review and appellate review by failing to file objections that are timely and sufficiently specific

(the "firm waiver rule"). *Moore v. Astrue*, 491 Fed. Appx. 921, 923 (10th Cir. 2012)

(unpublished), citing *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1060 (10th Cir.

1996).

ENTERED this 2nd day of November, 2016.

Paul J. Cleary
United States Magistrate Judge

9
