UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **KARNETHA LADAWN WRIGHT-FOX,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**CAROLYN W. COLVIN,** )<br>**Acting Commissioner,** )<br>**Social Security Administration,** )<br>)<br>**Defendant.** ) | Case No. 15-CV-0550-CVE-PJC |

## OPINION AND ORDER

Now before the Court is the Report and Recommendation (Dkt. # 18) of the Magistrate Judge Paul J. Cleary recommending that the Court affirm the decision of the Commissioner of Social Security denying plaintiff's claim for disability benefits. Plaintiff has filed an objection (Dkt. # 19) to the Report and Recommendation, and defendant has filed a response (Dkt. # 20) to the objection.

I.

On September 20, 2010, plaintiff protectively filed an application for Title II disability benefits. Dkt. # 10, at 110. Plaintiff's application stated that she suffered from various impairments that left her unable to work, including glaucoma, degenerative disc disease of the lumbar spine, migraines, arthritis, gastroesophageal reflux, and marijuana usage. Plaintiff's claims were denied initially on February 7, 2011, and upon reconsideration on April 25, 2011. Id. Plaintiff requested a hearing before an Administrative Law Judge (ALJ), and that hearing was held on February 16, 2012. Id. at 29. On March 27, 2012, the ALJ issued a written decision finding that plaintiff was not disabled. Id. at 110-17. Plaintiff asked the Appeals Council to review the ALJ's decision and requested a new hearing based on new and material evidence. Id. at 122. The Appeals Council

granted plaintiff's request, vacated the ALJ's March 27 decision, and remanded plaintiff's case to the ALJ. Id. A second hearing was held on January 8, 2014. Id. at 78.

Plaintiff appeared at the second hearing and was represented by an attorney. Id. at 80. Plaintiff was 53 years old at the time of hearing and testified that she lived in a one-story house with her daughter. Id. at 82. Plaintiff has a bachelor of science degree in computer and management information systems. Id. at 85. Plaintiff testified that due to lower back spasms and pain in her left hip, she could sit for only one hour at a time, up to six hours in an eight-hour day; stand for only 30 minutes, up to one hour in an eight-hour day; and walk for only 30 minutes in an eight-hour day. Id. at 89-90. Plaintiff stated that she had poor peripheral vision, problems focusing her vision, light sensitivity, floaters, and difficulty reading from a computer screen. Id. at 91-92. Plaintiff testified that she had migraines twice a month, could not lift a gallon of milk, and had problems with reaching, concentration, persistence, and pace. Id. at 93-94.

On February 27, 2014, the ALJ issued a written decision finding that plaintiff was not disabled. Id. at 17. The ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date and that plaintiff had severe impairments affecting her ability to work, including glaucoma, degenerative disc disease of the lumbar spine, and peripheral neuropathy. Id. at 20. The ALJ stated that plaintiff's marijuana usage was non-severe, and her alleged arthritis was non-medically determinable. Id. The ALJ further found that plaintiff did not have an impairment or combination of impairments that was equivalent to one of those listed in 20 C.F.R., Part 404, Subpart P, Appendix 1. Id. The ALJ then formulated plaintiff's residual functional capacity (RFC). The ALJ found that plaintiff could:

> lift or carry no more than 50 pounds occasionally and 25 pounds frequently; stand and/or walk for 6 hours in an 8-hour workday; sit 6 hours in an 8-hour workday; frequently climb stairs, ladders, ropes, and scaffolds; frequently balance, bend or stoop, kneel, crouch, and crawl; frequently bilaterally reach, finger, handle, and feel; avoid moderate exposure to extreme cold (less than 50 degrees Fahrenheit), extreme [heat] (over 100 degrees Fahrenheit), wetness, humidity, vibration or vibratory tools, fumes, odors, dusts, toxins, gases, and poor ventilation; avoid all exposure to hazardous or fast machinery and unprotected heights; and [could] read 14-font print with glasses, use depth perception, and should avoid direct sunlight and bright lights.

Id.

In formulating plaintiff's RFC, the ALJ took into account all medical evidence and testimony. Id. at 26. The ALJ explained that he gave "great weight" to the opinions of Johnson Gourd, M.D. Id. Dr. Gourd conducted two consultative physical exams of plaintiff, and in the second, which the ALJ noted as particularly important to his RFC formulation, he assessed plaintiff to be able to lift and carry up to 20 pounds frequently and up to 100 pounds occasionally. Id. at 605. Dr. Gourd also determined that plaintiff could sit for eight hours in an eight-hour workday, stand and/or walk for six hours in an eight-hour workday, and perform frequent reaching, handling, fingering, feeling, pushing, and pulling. Id. at 605-06. Dr. Gourd also noted that he believed plaintiff was exaggerating her symptoms and limitations. Id. at 616. The ALJ also gave "great weight" to the opinions of Kenneth Wainner, M.D. Id. at 26. Dr. Wainner is a state agency medical consultant, who assessed plaintiff to be able to lift and carry up to 50 pounds occasionally, lift and carry up to 25 pounds frequently, stand for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. Id. at 531.

The ALJ gave "little weight" to the testimony of Michael Karathanos, M.D. Id. at 26. Dr. Karathanos did not detect any spasticity, rigidity, involuntary movements, tremors, atrophy, or fasciculations in plaintiff's muscles. Id. at 625. He observed that plaintiff's gait was stable and

3

somewhat slow, that plaintiff "moans and groans and sighs softly" while walking, and that she could perform tandem gait and walk on heels and toes. Id. Dr. Karathanos noted that plaintiff did not exert her full strength during muscle testing. Id. at 625. Dr. Karathanos's lumbosacral exam revealed about 50 percent decreased flexion and about 20 percent of extension, and plaintiff had a positive straight leg raise test. Id. Dr. Karathanos found that plaintiff could lift and carry up to 10 pounds occasionally; sit one hour at a time, up to six hours in an eight-hour workday; stand 30 minutes at a time, up to one hour in an eight-hour workday; walk 15 to 30 minutes at a time, up to 30 minutes in an eight-hour workday; occasionally reach; and frequently handle, finger, and feel. Id. at 627-28. The ALJ explained that he gave Dr. Karathanos's determinations of plaintiff's abilities little weight because they were inconsistent with his own examination results. Id. at 26.

The ALJ concluded that plaintiff could not perform any past relevant work, but that plaintiff could perform other jobs existing in significant numbers in the national economy. Id. at 27. He concluded by stating that plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy" and finding that plaintiff was not disabled. Id. at 28.

## II.

Without consent of the parties, the Court may refer any pretrial matter dispositive of a claim to a magistrate judge for a report and recommendation. However, the parties may object to the magistrate judge's recommendation within fourteen days of service of the recommendation. Schrader v. Fred A. Ray, M.D., P.C., 296 F.3d 968, 975 (10th Cir. 2002); Vega v. Suthers, 195 F.3d 573, 579 (10th Cir. 1999). The Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C.

§ 636(b)(1). The Court may accept, reject, or modify the report and recommendation of the magistrate judge in whole or in part. Fed. R. Civ. P. 72(b).

### III.

The Social Security Administration has established a five-step process to review claims for disability benefits. See 20 C.F.R. § 404.1520. The Tenth Circuit has outlined the five step process:

> Step one requires the agency to determine whether a claimant is "presently engaged in substantial gainful activity." [Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004)]. If not, the agency proceeds to consider, at step two, whether a claimant has "a medically severe impairment or impairments." *Id*. An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities. *See* 20 C.F.R. § 404.1521. At step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation." *Allen*, 357 F.3d at 1142. If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent [him] from performing [his] past relevant work. *See id.* Even if a claimant is so impaired, the agency considers, at step five, whether [he] possesses the sufficient residual functional capability to perform other work in the national economy. *See Id.*

Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). The ALJ decided this case at step five of the analysis, finding that Medical-Vocational Rule 203.28 required a determination of not disabled. See 20 C.F.R., Pt. 404, Subpt. P, App'x 2, Rule 203.28. The Commissioner bears the burden to present sufficient evidence to support a finding of not disabled at step five of the review process. Emory v. Sullivan, 936 F.2d 1092, 1094 (10th Cir. 1991). The Medical-Vocational Rules "contain tables of rules which direct a determination of disabled or not disabled on the basis of a claimant's RFC category, age, education, and work experience." Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). However, the rules "may not be applied conclusively in a given case unless the claimant's characteristics precisely match the criteria of a particular rule." Id. (quoting Frey v. Bowen, 816 F.2d 508, 512 (10th Cir. 1987)).

The Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but, instead, reviews the record to determine if the ALJ applied the correct legal standard and if his decision is supported by substantial evidence. Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004). The Court must meticulously examine the record as a whole and consider any evidence that detracts from the Commissioner's decision. Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994).

Plaintiff objects to the magistrate judge's report and recommendation on two issues: (1) the ALJ's evaluation of the medical opinions of consultative examining physician Dr. Karathanos, and (2) the ALJ's formulation of plaintiff's RFC.

## A.

Plaintiff argues that the ALJ did not give sufficient weight to the opinions of consultative examining physician Dr. Karathanos, and that the ALJ's explanation for giving Dr. Karathanos's opinions "little weight" is insufficient as a matter of law because the ALJ ignored other evidence in the record that supports Dr. Karathanos's opinions. Dkt. # 14, at 5-6. The magistrate judge has recommended that the ALJ properly considered Dr. Karathanos's opinions and that the ALJ's decision to afford less weight to the opinions of Dr. Karathanos is supported by substantial evidence. Dkt. # 18, at 5-7.

The ALJ in this case had conflicting opinions regarding the amount plaintiff could lift and carry; the duration that plaintiff could sit, stand, and walk; and the frequency with which plaintiff could reach. Dr. Karathanos's opinions conflicted with the opinions of Dr. Gourd and Dr. Wainner. Both Drs. Karathanos and Gourd are consultative examining physicians in this case. Dr. Gourd examined plaintiff twice, once in 2011 and again in 2013. See Dkt. # 10, at 468, 604. Dr. Karathanos examined plaintiff once in 2013. See id. at 625. Dr. Wainner is a state agency medical consultant, who reviewed plaintiff's medical records in 2011. See id. at 531. The ALJ gave Dr. Karathanos's opinions "little weight" because they were "inconsistent with his own examination results on the same date," including that plaintiff did not exert her full strength during muscle testing, no muscle issues were detected, plaintiff's gait was stable, and plaintiff could perform tandem gait and walk on her heels and toes. Id. at 26. Plaintiff argues that this explanation is legally inadequate because the ALJ did not consider other evidence in the record that supported Dr. Karathanos's opinions. Dkt. # 14, at 6-8.

"An ALJ must 'give consideration to all the medical opinions in the record [and] discuss the weight he assigns to such opinions.'" Vigil v. Colvin, 805 F.3d 1199, 1201-02 (10th Cir. 2015) (quoting Keyes-Zachary v. Astrue, 695 F.3d 1156, 1161 (10th Cir. 2012)). "When assessing a medical opinion, the ALJ must consider the factors listed in 20 C.F.R. § 404.1527(c) and give good reasons for the weight he assigns to the opinion." Id. at 1202. An ALJ's finding that a doctor's opinions are inconsistent with his own examination findings is a good reason for giving that medical opinion less weight. Id.

Here, the ALJ summarized Dr. Karathanos's findings, including that there were no muscle abnormalities found, that plaintiff had no issues with her gait, and that plaintiff did not exert her full

7

effort on the muscle strength test. Dkt. # 10, at 25-26. The ALJ then noted that these findings did not support Dr. Karathanos's opinions regarding plaintiff's abilities recorded in his medical source statement. Id. Dr. Karathanos's examination findings largely comport with the findings of other physicians in the record. He found that the plaintiff could walk without assistance and without difficulty, that her muscle strength was good, that she had no muscle abnormalities, and that her back and left hip caused some pain and decreased extension. Id. at 625–31; see also id. at 468, 477, 546, 552, 560, 582 (similar findings). Importantly, Dr. Karathanos also observed, as had Dr. Gourd, that plaintiff showed signs of not giving her full effort and exaggerating her symptoms. Id. at 625; see also id. at 616 (Dr. Gourd's assessment that plaintiff "completely exaggerates the entire [range of motion] exam to include very slow and deliberate movements, eyes closed, more yawning, then laughing"). However, unlike the two other physicians who directly addressed plaintiff's abilities, Dr. Karathanos found that plaintiff was severely limited in her ability to lift, carry, sit, stand, walk, and reach. The records plaintiff argues support Dr. Karathanos's opinions, support a finding of degenerative disc disease of the lumbar spine, but do not address the severity of plaintiff's problems or her ability to lift, carry, sit, stand, walk, or reach. The ALJ determined that plaintiff has degenerative disc disease of the lumbar spine, and that it is a severe impairment. How that disease affects her ability to function is a separate analysis.

As the ALJ noted, when presented with conflicting medical evidence, "[t]he trier of fact has the duty to resolve that conflict." Richardson v. Perales, 402 U.S. 389, 399 (1971). The ALJ resolved the conflict in plaintiff's medical record by giving less weight to opinions not supported by the examiner's own findings. This is permissible, and the ALJ's explanation is sufficient to support the weight given Dr. Karathanos's opinions.

8

**B.**

Plaintiff also asserts that the ALJ's RFC assessment, finding plaintiff could perform the full range of medium work, is not supported by substantial evidence. Dkt. # 14, at 8. The magistrate judge has recommended that while the record may be susceptible to a different conclusion, the ALJ's RFC assessment is nevertheless supported by substantial evidence. Dkt. # 18, at 8.

As discussed above, plaintiff's medical records in this case contain some conflicting evidence, and the ALJ properly evaluated the conflicts between Dr. Karathanos on the one hand and Drs. Gourd and Wainner on the other. See supra part III.A. However, the ALJ did not base his RFC assessment exclusively on the opinions of Drs. Gourd and Wainner. The magistrate judge listed in detail the numerous findings of multiple other treating and consultative physicians that support the ALJ's RFC assessment, including findings from treating physicians Gary Cannon, D.O., Jean Bernard, M.D., and Michelle Bucholtz, D.O., and consultative examining physicians Kris Parchuri, M.D., Ashok Kache, M.D., and Alison Hansen, O.D. The Court's own independent review of the record comports with the findings of the magistrate judge. The ALJ's RFC assessment is supported by substantial evidence, and it is not the role of the Court to reweigh the evidence. Thus, the ALJ's decision should be affirmed.

**IT IS THEREFORE ORDERED** that the Report and Recommendation (Dkt. # 18) is **accepted**, and the Commissioner's decision denying plaintiff's application for disability benefits is **affirmed**. A separate judgment is entered herewith.

**DATED** this 8th day of December, 2016.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE